IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**Jermaine L. Patterson,**

    Petitioner,                        CASE NO. 2:12-cv-0817
                                        CRIM. NO. 2:10-cr-263(1)

    v.

                                            **JUDGE MICHAEL H. WATSON**
**United States of America,**          Magistrate Judge Kemp

    Respondent.

REPORT AND RECOMMENDATION

I. <u>Introduction</u>

Petitioner Jermaine Patterson, convicted in this Court of a criminal offense, has, as authorized by 28 U.S.C. §2255, filed a timely motion to vacate, correct or set aside his sentence.  In his motion, he claims that his attorney was constitutionally ineffective because he "failed to file a timely notice of Appeal when requested to do so by Petitioner."  *Motion to Vacate*, Doc. 74, ¶12.  He made that allegation under penalty of perjury and also attached two affidavits to his motion from witnesses who claimed that Mr. Patterson's attorney had been told to file a notice of appeal, had promised he would, and that he did not follow through on that promise.

In response, the United States recognized that even though Mr. Patterson's trial attorney, Terry Sherman, was willing to swear that he was never asked to file a notice of appeal, any such affidavit would simply create a factual issue not capable of resolution on the basis of written filings.  The United States asked the Court to hold an evidentiary

hearing on the issue.  The Court agreed and appointed counsel for Mr. Patterson.  Before the hearing, Mr. Patterson hired his own attorney, Jeffrey Brandt.

The hearing took place on July 17, 2013.  Three witnesses testified.  The Court took the matter under advisement.  For the reasons which follow, it will be recommended that the motion to vacate be denied.

## II.  Procedural History

On October 7, 2010, the grand jury indicted Mr. Patterson and another individual, Willie Perez, Jr.  Both men were charged with one count of possessing cocaine with the intent to distribute it.  The indictment specified that the amount of cocaine possessed by the defendants was 500 or more grams.  (Doc. 1).

Mr. Patterson was arrested and appeared before the Court on October 14, 2010.  He was arraigned four days later, pleaded not guilty, waived a detention hearing, and was detained without bond pending trial.  (Doc. 11).  The following month, Attorney Sherman entered his appearance for Mr. Patterson, replacing Attorney Michael H. Siewert .  (Doc. 19).

On March 9, 2011, Mr. Patterson appeared before the Honorable Michael H. Watson and changed his plea to guilty.  His plea agreement (Doc. 32) stated that the maximum term of imprisonment Mr. Patterson was facing was 40 years, with a mandatory minimum of five years, and that he was aware that the Court had jurisdiction to sentence him up to the statutory maximum.  Mr. Patterson also acknowledged, in the agreement, that any representation made to him about a sentence was just a prediction, not a promise, and that

for sentencing purposes the "relevant conduct," phrased in terms of drug quantities, would be between 15 and 50 kilograms of cocaine, resulting in a base offense level of 34. (Doc. 32, ¶s 7-8). The parties also agreed (subject, of course, to Court approval) to a three-level reduction in the base offense level for acceptance of responsibility and for timely notifying the Court of an intent to plead guilty. *Id*. at ¶9.

The Probation Office then prepared a presentence investigation report. In the final version of the report, or PSI, dated June 22, 2011, the Probation Officer accepted the parties' agreement about the quantity of drugs involved and the base offense level resulting from that amount of cocaine. The PSI increased that level by two points based on a firearm enhancement, reduced it by three points due to acceptance of responsibility and timely notification of an intent to plead guilty, and reached a final offense level of 33 under the drug case guidelines.

That was not the only way to calculate the base offense level, however. The PSI also determined that Mr. Patterson had been convicted of a prior controlled substance offense, trafficking in cocaine, and a prior crime of violence, attempted abduction and aggravated assault, both in the Franklin County Court of Common Pleas. Under §4B1.1 of the United States Sentencing Guidelines, Mr. Patterson qualified for career offender status. That guideline produced a base offense level of 34. However, since the offense level for the drug offense, as calculated by the Probation Office using the firearm enhancement, was 36, that became the offense level for the career offender calculation as well. Again, when the offense level was reduced for acceptance of responsibility and timely intent to plead guilty,

it came out to a final offense level of 33, which was the same as the first calculation using the quantity of cocaine involved in the case as relevant conduct. According to the PSI, someone in Criminal History Category VI (which is required for career offenders) and an offense level of 33 has a guideline range of 235-293 months. The Probation Office recommended a sentence of 240 months, plus five years of supervised release.

Mr Patterson appeared for sentencing on September 7, 2011. At sentencing, Judge Watson agreed with an argument advanced by Mr. Sherman that the firearm enhancement did not apply. That reduced the offense level to 31 under both guidelines. Judge Watson further determined that the guideline range, based on the drug case calculation, was 188 to 235 months, and he further determined that Mr. Patterson's criminal history category of VI was overstated. Consequently, Judge Watson departed downward to a sentence of 175 months of imprisonment. That sentence appears in the Court's Judgment and Commitment Order filed on September 21, 2011. As noted, Mr. Patterson did not appeal the judgment. He filed his §2255 motion to vacate on September 6, 2012.

### III.  The Testimony at the Hearing

#### A.  Jermaine Patterson

Mr. Patterson was the first witness to testify. He said that Mr. Sherman did not visit him very often in jail while the case was proceeding, but that he was able to make contact with Mr. Sherman by way of three-way telephone calls from jail, placed first to his Aunt or his girlfriend, who would then call in to Mr. Sherman's office or cell phone.

Mr. Patterson said that after his guilty plea, he was expecting a sentence in the range

of nine years. He was surprised that the guideline range in the PSI was so high, and also surprised at the final 175 month sentence he received. He admitted he was advised at sentencing of his appeal rights and that he did not immediately instruct either Mr. Sherman or the Clerk to file a notice of appeal.

After he returned to the Franklin County Jail, where he remained until approximately the end of September, Mr. Patterson decided that it would not hurt to preserve his appellate rights, even though he was not quite sure what issues he wanted to raise on appeal. Mr. Patterson then attempted to speak with Mr. Sherman about filing a notice of appeal. He placed at least two phone calls to Mr. Sherman by way of the three-way calling arrangement described above, using his girlfriend, Latosha Hollingsworth, as the intermediary. He was unable to speak to Mr. Sherman directly but left messages, the gist of which were "please come talk to me about an appeal." He did not actually tell Mr. Sherman in either of the telephone messages to file the notice. Mr. Patterson also wrote Mr. Sherman a "thank you" card during this time. He did not keep a copy. In the card, after thanking Mr. Sherman for working hard on his behalf, Mr. Patterson again requested that Mr. Sherman come see him to discuss an appeal. Mr. Sherman never called or visited Mr. Patterson while he remained in Franklin County, nor at any time while the appeal time was running.

Mr. Patterson also spoke about the issues he thought should have been raised on appeal. It appears he researched these issues after he was committed to federal prison, first at Milan, Michigan and then at Terre Haute, Indiana. He believed that he should not have

been sentenced based on 15 to 50 kilograms of cocaine, even though he agreed to that amount in the plea agreement, and he also believed that the career offender designation was wrong because his current case did not involve enough cocaine. He said that Mr. Sherman did tell him, during their discussion of the PSI, that the relevant conduct was, in fact, irrelevant, since Mr. Patterson was going to be sentenced under the career offender guidelines since they produced a higher offense level.

During his testimony, Mr. Patterson candidly acknowledged that the statement he made in his §2255 motion about having directed Mr. Sherman to file a notice of appeal was not exactly accurate. He explained that his "jailhouse lawyer," who was an attorney, had told him that he could get an evidentiary hearing if he claimed that his counsel disregarded a direct order from his client to file a notice of appeal. However, Mr. Patterson believed that his voicemails and letter were the equivalent of a face-to-face conversation about filing a notice of appeal.

B. Latosha Hollingsworth

Latosha Hollingsworth is Mr. Patterson's girlfriend. She signed one of the affidavits attached to Mr. Patterson's motion to vacate. The affidavit was sent to her by Mr. Patterson and apparently written by his jailhouse lawyer. In the affidavit, Ms. Hollingsworth swore that she spoke directly to Mr. Sherman on September 11, 2011, and that he told her he would immediately file a notice of appeal for Mr. Patterson when he returned to his office because the sentence Mr. Patterson received was "to (sic) long."

When she testified at the hearing, Ms. Hollingsworth admitted that the statement

in the affidavit was not literally true. Apart from the fact that the conversation did not happen on September 11, 2011, which was a Sunday, Ms. Hollingsworth said that she and Mr. Patterson's mother met with Mr. Sherman outside the courtroom after the sentencing and asked about an appeal. She did not remember his response. However, at some point when she asked him about an appeal, he said that Mr. Patterson should be happy with the sentence he got because it could have been much longer.

Ms. Hollingsworth also paid Mr. Sherman's legal bills for representing Mr. Patterson. On some day within the time period for filing an appeal, she went to his office to pay the final installment. The discussion about an appeal during which Mr. Sherman made the comment noted above may have occurred then. Ms. Hollingsworth was a party to the phone calls during which Mr. Patterson left the messages for Mr. Sherman to call him about the appeal. She recalled telling Mr. Sherman herself both that Mr. Patterson wanted to speak to Mr. Sherman about an appeal, and that he wanted Mr. Sherman to file an appeal.

### C. Terry Sherman

Mr. Sherman is a criminal defense attorney who has been in practice since 1971. A majority of his practice consists of representing clients in federal court.

Mr. Sherman testified that he met with Mr. Patterson on a number of occasions during the course of this case. They discussed the plea agreement in detail. They also went over the PSI and the objections to the PSI in person.

Mr. Sherman said that he never discussed an appeal directly with Mr. Patterson. He

might have talked to Ms. Hollingsworth outside the courtroom on the day of sentencing, but only to explain the sentence. He stated that he never received any voicemails or letters from Mr. Patterson about an appeal. Had he done so, he would have explained to Mr. Patterson that due to the guilty plea, the only possible appellate issues would have been sentencing issues, and Mr. Sherman did not believe that he could successfully appeal a sentence which represented a downward departure from the guidelines. He would have discouraged Mr. Patterson from filing an appeal because, if the case were remanded for resentencing - or, even worse, if the conviction were vacated - Mr. Patterson could be facing either a longer sentence or more serious charges. However, had Mr. Patterson insisted on appealing, he would have filed a notice of appeal and then sought leave to withdraw as counsel.

## IV. Discussion

The lead case in this area is the Supreme Court's decision in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000). In that case, Luis Flores-Ortega pleaded guilty in California state court to a charge of second-degree murder. He was advised of his appellate rights at sentencing. Counsel's file contained a note about "appeal papers" but no timely appeal was filed. Flores-Ortega took an untimely appeal which the state court refused to entertain. He then filed for a writ of habeas corpus, contending that his counsel violated the Sixth Amendment guarantee of effective assistance of counsel by failing to file a notice of appeal as directed. He obtained such a writ from the Ninth Circuit Court of Appeals, which reasoned that, under its precedent, unless a defendant expressly consents to counsel's

failure to file a notice of appeal, the defendant was entitled to return to state court and pursue an appeal.

In resolving the case, the Supreme Court reaffirmed earlier holdings that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Flores-Ortega*, at 477. But it had not previously decided whether ineffective assistance of counsel occurred in the situation where the defendant neither directed counsel to file an appeal nor consented to its not being filed. Before addressing that question, the Court posed what it described as an "antecedent [] question: whether counsel in fact consulted with the defendant about an appeal." *Id*. at 478. It described such consultation as "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* If that occurred, counsel would have acted unreasonably "by failing to follow the defendant's express instructions with respect to an appeal." *Id*. If that did not occur, however, the question becomes "whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Id.*

*Flores-Ortega* answered that question this way: "We cannot say, as a constitutional matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient." *Id*. at 479. Rather, the question of effective assistance of counsel, governed by the Court's prior decision in *Strickland v. Washington*, 466 U.S. 668 (1984), depends on one of two factors: either the existence of reasonable grounds for appeal, or the existence of an express directive from the defendant

to file a notice of appeal. *Id*. at 480. If a rational defendant would want to appeal - a determination to be made based on "all the information counsel knew or should have known," *id*. - failing to explain the pros and cons of an appeal is ineffective assistance of counsel. Similarly, if the defendant asks counsel to appeal, failing to do so is ineffective assistance. The testimony given in this case potentially implicates both of these theories, and the Court will address each separately.

### A. Did Mr. Patterson Direct Mr. Sherman to Take an Appeal?

This is a factual question. The Court begins its analysis with the proposition that, as the petitioner, Mr. Patterson had the burden of proving by a preponderance of the evidence that he, or someone acting with full authority from him, told Mr. Sherman that an appeal should be filed. *See McQueen v. United States*, 58 Fed. Appx. 73, 76 (6th Cir. January 7, 2003)("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. §2255 have the burden of sustaining their contentions by a preponderance of the evidence"); *United States v. Stiffel*, 594 F.Supp. 1525, 1528 (N.D. Ohio 1984)("In order to prevail on a § 2255 motion, the petitioner has the burden of proving by a preponderance of the evidence that his constitutional rights were denied or infringed"). That means, of course, that "[t]he requirement of a preponderance of evidence is not satisfied if the evidence is in equipoise," *see Thinguldstad v. United States*, 343 F.SUPP. 551, 556 (S.D. Ohio 1972). In other words, if the evidence relating to a factual issue is evenly balanced, the Court must resolve that issue in favor of the defending party, because the petitioner would not have met the burden of proof.

Here, the most that can be said about the evidence concerning any direct instruction to Mr. Sherman is that it does not favor Mr. Patterson. He conceded that he never told Mr. Sherman in so many words to file a notice of appeal. Even if his testimony is completely believed, he only asked Mr. Sherman to consult him about an appeal. The only witness who testified about a direct instruction to Mr. Sherman was Ms. Hollingsworth. However, she admitted signing an affidavit that was materially false. Her testimony has some weight, but not a great amount.

Mr. Sherman, on the other hand, testified unequivocally that no one acting on Mr. Patterson's behalf asked him to file a notice of appeal. He described in detail what he would have done had he received such a request, and he did none of that here. It would not have been either burdensome for Mr. Sherman to file a notice of appeal, or troubling to him in any way; to the extent he thought there were no appealable issues (and he did think that), he could simply have filed the required notice and then withdrawn from the case, something which he had done in other cases. It is conceivable, of course, that he disregarded either Mr. Patterson's requests to consult about an appeal or Ms. Hollingsworth's directive to appeal on Mr. Patterson's behalf, but he would have had no reason to do so, would have breached a professional obligation (of which he was well aware) to a client that he had diligently represented throughout the plea and sentencing process, and would have potentially exposed himself to liability or discipline, all for no good or apparent reason. Phrasing the question in terms of the burden of proof, is it more likely than not that this is what happened? The Court cannot reach that conclusion.

-11-

Simply put, Mr. Patterson did not prove by a preponderance of the evidence that he or anyone else specifically directed Mr. Sherman to file a notice of appeal.

    B. <u>Did Mr. Sherman Have a Duty to Advise Mr. Patterson about an Appeal?</u>

The other question that Mr. Patterson's petition raises is whether Mr. Sherman was constitutionally ineffective by not advising Mr. Patterson about an appeal. On this point, the evidence is clear: the two never had a conversation about the pros and cons of filing an appeal. As *Flores-Ortega* points out, this is a problem only if there were reasonable grounds to appeal. The Court finds that, on this record, no such grounds existed.

Mr. Patterson pleaded guilty and has not argued that any grounds exist to set aside the plea. When a defendant knowingly and voluntarily enters a guilty plea, he waives, for purposes of appeal, any issues about the validity of his conviction apart from challenges to the jurisdiction of the court. *See Tollett v. Henderson*, 411 U.S. 258 (1973); *United States v. Pickett*, 941 F.2d 411 (6th Cir. 1991). No jurisdictional challenges appear on this record. Therefore, the only possible issues which could have been raised on appeal would be issues relating to sentencing. In fact, Mr. Patterson's testimony suggested that he only wanted to appeal because he believes there were some issues relating to his sentence.

Mr. Patterson received a sentence that was below the guideline range based on either the career offender provisions of the guidelines or the drug case guidelines. A defendant cannot ordinarily complain on appeal about a below-guidelines sentence. *See United States v. Gregory*, 932 F.2d 1167, 1169 (6th Cir. 1991)(holding that "this court should not accept jurisdiction over appeals based on factors which the appellant argues should

have influenced the degree of a downward departure"). The most he could have argued on appeal would have been that the Court miscalculated his guideline range, which might then have influenced his sentence even though the Court granted him a downward departure from the range which the Court thought was applicable.

The Court starts with the guideline range for the drug offense. That range was calculated using five to fifteen kilos of cocaine as the relevant conduct. Mr. Patterson both stipulated to that amount of cocaine as relevant conduct by signing the plea agreement, and did not object to the Probation Officer's and the Court's use of that amount of cocaine in determining the base offense level. Under these circumstances, any argument on appeal that the Court erred in determining the amount of cocaine which constituted relevant conduct would have been frivolous. *See, e.g, United States v. Pearson*, 430 Fed. Appx. 431, 435 (6th Cir. July 14, 2011) (holding that where a defendant "never objected to the quantity of drugs in the PSR, the district court did not abuse its discretion in relying on those undisputed quantities to determine his sentence"). *See also United States v. Treadway*, 328 F.3d 878 (6th Cir. 2003). The same is true for any argument that the Court was limited to using the amount of cocaine charged in the indictment as relevant conduct. *See, e.g., United States v. Salas*, 455 F.3d 637, 640 (6th Cir. 2006)("The commentary to § 2D1.1 of the Sentencing Guidelines instructs that '[t]ypes and quantities not specified in the count of conviction may be considered in determining the offense level'"). That is just what the Court did, and that is entirely in accordance with the guidelines.

The only other possible issue which Mr. Patterson suggested he might want to raise

on appeal deals with the career offender determination.  As noted, that range was also 188 to 235 months.  Since the two ranges were the same and there was no error in the Court's guideline calculation under the drug guidelines, any issue about the career offender guideline would seem to be moot.  Even if that guideline calculation had some effect on his sentencing, however, there was nothing improper in the way the Court calculated that range, and no issue to appeal.

Under U.S.S.G. 4B1.1, someone who "was at least eighteen years old at the time the defendant committed" a controlled substance offense is a "career offender" if the person "has at least two prior felony convictions of either a crime of violence or a controlled substances offense."  Mr. Patterson does not dispute that prior to committing the offense involved in this case, he had at least one prior state conviction for a crime of violence, and one for a controlled substances offense.  He suggested at the hearing that a career offender determination could not be made unless the controlled substance offense involved in this case actually involved a certain minimum amount of cocaine, but nothing in the language of the guidelines has such a limitation in it.  There was simply no error in the way the career offender guideline calculation was made, and certainly no error which was pointed out by counsel during the sentencing process. That alone would have prevented him from claiming any error on appeal, *see United States v. Hible*, 700 F.3d 958, 962 (7th Cir. 2012), although, of course, there was no error to which he could have raised a legitimate objection.

## V. Conclusion

This is a case where everyone appears to agree that Mr. Sherman provided excellent

representation to Mr. Patterson during the trial court phase of the case. The Court has found that Mr. Patterson failed to prove by a preponderance of the evidence that he or anyone else directed Mr. Sherman to file a notice of appeal. The Court has further found that the sentencing process appears to be error-free, and that there are no issues which a defendant could reasonably have wished to raise on appeal. Under these circumstances, there is no merit in Mr. Patterson's claim of ineffective assistance of counsel, and his motion to vacate should be dismissed.

## VI. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas*

*v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                                  /s/ Terence P. Kemp
                                                  United States Magistrate Judge